## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IKON OFFICE SOLUTION, INC., | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.:  04-CV-2735** |
| | : | |
| v. | : | **Honorable William Yohn** |
| | : | |
| DAVID RUPERT, | : | **Jury Trial Demanded** |
| | : | |
| **Defendant/** | : | |
| **Counterclaim Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| IKON OFFICE SOLUTIONS, INC., | : | |
| MATTHEW J. ESPE, and BETH | : | |
| SEXTON, | : | |
| | : | |
| **Counterclaim Defendants.** | : | |
| | : | |

## ANSWER AND COUNTERCLAIMS
## OF DAVID RUPERT

Defendant and Counterclaim Plaintiff David Rupert ("Mr. Rupert"), by his undersigned

attorneys, Buchanan Ingersoll PC, hereby responds to the numbered paragraphs of the Complaint

of IKON Office Solutions, Inc. ("IKON") in this action as follows:

### FIRST DEFENSE

The preamble to the Complaint does not contain any factual averments and therefore Mr.

Rupert is not required to respond.  If and to the extent a response is deemed to be required, Mr.

Rupert denies that he violated his Executive Employment Agreement, the Relocation Payment

and Expense Reimbursement Agreement ("Relocation Agreement"), and/or Pennsylvania

common law.  Further responding, Mr. Rupert admits that from November 3, 2003 through April

1

30, 2004 he worked as Vice President, Management Services for IKON and that IKON considered this a "key, executive" position.

1.      Mr. Rupert admits the averments contained in paragraph 1 of the Complaint.

2.      Mr. Rupert admits the averments contained in paragraph 2 of the Complaint.

3.      Mr. Rupert admits the averments contained in paragraph 3 of the Complaint.

4.      Mr. Rupert admits the averments contained in paragraph 4 of the Complaint.

5.      Mr. Rupert admits the averments contained in paragraph 5 of the Complaint.

6.      Mr. Rupert denies the averments contained in Paragraph 6 of the Complaint, except Mr. Rupert admits that pursuant to his written Executive Employment Agreement he was to receive an annualized base salary of $275,000, payable in accordance with IKON's regular payroll practices.

7.      Mr. Rupert denies the averments contained in paragraph 7 of the Complaint, except Mr. Rupert admits that he executed the written Relocation Agreement on January 14, 2004.

8.      Mr. Rupert admits the averments contained in paragraph 8 of the Complaint.

9.      Mr. Rupert admits the averments contained in paragraph 9 of the Complaint.

10.     Mr. Rupert denies the accuracy or completeness of IKON's characterization in paragraph 10 of the Complaint of his obligations under the Executive Employment Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself.  By way of further answer, Mr. Rupert admits that he received health and dental insurance and had the right to paid vacation during his employment at IKON.

11.     Mr. Rupert denies the averments contained in paragraph 11 of the Complaint, except Mr. Rupert admits that, pursuant to the terms of the Relocation Agreement, he received a

2

lump sum taxable relocation payment in the gross amount of $125,000 in or around January, 2004.

12.    Mr. Rupert denies the averments and conclusions of law contained in paragraph 12 of the Complaint. By way of further answer, Mr. Rupert incorporates herein by reference the averments contained in paragraphs 1 through 59 of his Counterclaims.

13.    Mr. Rupert denies the averments contained in paragraph 13 of the Complaint.

14.    Mr. Rupert denies the averments contained in paragraph 14 of the Complaint.

15.    Mr. Rupert denies the averments contained in paragraph 15 of the Complaint.

16.    Mr. Rupert denies the accuracy or completeness of IKON's characterization in paragraph 16 of the Complaint of his obligations under the Executive Employment Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself. By way of further answer, Mr. Rupert denies the implication of paragraph 16 of the Complaint that he breached his duty of loyalty to IKON and incorporates herein by reference the averments contained in paragraphs 1 through 59 of his Counterclaims.

17.    Mr. Rupert denies the accuracy or completeness of IKON's characterization in paragraph 17 of the Complaint of the rights and obligations imposed on the parties pursuant to the Executive Employment Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself. By way of further answer, Mr. Rupert denies the implication of paragraph 17 of the Complaint that he breached his duty of loyalty or engaged in any conduct that would afford IKON the right to terminate his employment "for cause" as defined in Section 2.1 of the Executive Employment Agreement and incorporates herein by reference the averments contained in paragraphs 1 through 59 of his Counterclaims.

18.     Mr. Rupert denies the averments contained in paragraph 18 of the Complaint and further denies the accuracy and completeness of IKON's characterization in paragraph 18 of the Executive Employment Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself.  By way of further answer, Mr. Rupert incorporates herein by reference the averments contained in paragraphs 1 through 59 of his Counterclaims.

19.     Mr. Rupert admits the averments contained in paragraph 19 of the Complaint.  By way of further answer, Mr. Rupert respectfully refers the Court to the full contents of the Executive Employment Agreement, the Relocation Agreement and the applicable IKON health and benefits plans, which are in writing and speak for themselves.

20.     Mr. Rupert denies knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 20 of the Complaint and on that basis denies those averments.

21.     Mr. Rupert denies the averments contained in paragraph 21 of the Complaint, except Mr. Rupert admits that IKON purported to terminate him "for cause."  By way of further answer, Mr. Rupert denies that there was "cause" for his termination and that his "for cause" termination was proper and incorporates herein by reference paragraphs 1 through 59 of his Counterclaims.

22.     Mr. Rupert denies the averments contained in paragraph 22 of the Complaint.  By way of further answer, Mr. Rupert incorporates herein by reference the averments contained in paragraphs 1 through 59 of his Counterclaims.

23.     Mr. Rupert denies the averments contained in paragraph 23 of the Complaint.  By way of further answer, Mr. Rupert incorporates herein by reference the averments contained in paragraphs 1 through 59 of his Counterclaims.

24.     Mr. Rupert denies knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 24 of the Complaint and on that basis denies those averments.

25.     Mr. Rupert denies the averments contained in paragraph 25 of the Complaint.

26.     Mr. Rupert denies the accuracy and completeness of IKON's characterization in paragraph 26 of the Complaint of the Relocation Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself.

27.     Mr. Rupert denies the averments contained in paragraph 27 of the Complaint in part and admits them in part.  Mr. Rupert denies the implication of paragraph 27 of the Complaint that the fact he had not relocated his house to Pennsylvania as of the date of his purported termination constitutes a breach of the Relocation Agreement.  Mr. Rupert admits that IKON paid him $125,000 and that, as of the date of his purported termination, he had not relocated his home from Connecticut to Pennsylvania.

28.     Mr. Rupert admits the averments contained in paragraph 28 of the Complaint.

29.     Mr. Rupert denies the averments contained in paragraph 29 of the Complaint.

30.     Mr. Rupert denies the averments contained in paragraph 30 of the Complaint.  By way of further answer, Mr. Rupert avers that he is not required to repay the pro rata portion of his relocation payment and relocation expense reimbursements and incorporates herein by reference the averments contained in paragraphs 1 through 59 of his Counterclaims.

5

31.     Mr. Rupert denies the accuracy and completeness of the averments in paragraph 31 of the Complaint regarding the Executive Employment Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself.

32.     Mr. Rupert denies the averments contained in paragraph 32 of the Complaint.

33.     Mr. Rupert denies the accuracy and completeness of the averments contained in paragraph 33 of the Complaint regarding the Relocation Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself, except Mr. Rupert admits that he executed the Relocation Agreement over 60 days after the Executive Employment Agreement.

34.     Mr. Rupert denies the accuracy and completeness of the averments in paragraph 34 of the Complaint regarding the Executive Employment Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself.  By way of further answer, Mr. Rupert denies the implication of  paragraph 34 that he has started up, become employed by, associated or affiliated with, in an executive or managerial, supervising, consulting, sales or other related capacity, any entity or business that is similar to or competes with IKON's business.

35.     Mr. Rupert denies the accuracy and completeness of the averments contained in paragraph 35 of the Complaint regarding the Executive Employment Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself.

36.     Mr. Rupert denies the accuracy and completeness of the averments in paragraph 36 of the Complaint regarding the Executive Employment Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself.

37.     Mr. Rupert denies the averments contained in paragraph 37 of the Complaint in part and admits them in part.  Mr. Rupert denies the implication of paragraph 37 of the Complaint that he has misappropriated IKON's confidential and proprietary and trade secret information or violated any duty of confidentiality imposed under the Executive Employment Agreement or by law.  Mr. Rupert admits that he had access during and in connection with his employment at IKON to certain information that IKON considers confidential and proprietary.

38.     Mr. Rupert denies knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 38 of the Complaint and on that basis denies those averments.

39.     Mr. Rupert denies the averments contained in paragraph 39 of the Complaint.

40.     Mr. Rupert denies the averments contained in paragraph 40 of the Complaint, except Mr. Rupert admits that (1) following his purported termination by IKON he has sought work as a consultant with Smooth Engine; (2) Smooth Engine is a consulting firm with offices at 230 Park Avenue, New York, New York as well as in  New Jersey and Connecticut; and (3) he had not yet relocated to Pennsylvania from Connecticut at the time of his purported termination by IKON.

41.     Mr. Rupert denies the averments contained in paragraph 41 of the Complaint.

42.     Mr. Rupert denies the averments contained in paragraph 42 of the Complaint.

43.     Mr. Rupert denies the averments contained in paragraph 43 of the Complaint

44.     Mr. Rupert denies the averments contained in paragraph 44 of the Complaint

45.     Mr. Rupert denies the averments contained in paragraph 45 of the Complaint.

46.     Mr. Rupert denies the averments contained in paragraph 46 of the Complaint in part and admits them in part.  Mr. Rupert denies the implication of paragraph 46 of the

Complaint that by association with Smooth Engine he is assisting HQ Global Workplaces to compete with IKON.  Mr. Rupert admits that the documents appended as Exhibit D to the Complaint appear to come from Smooth Engine's website and contain references to HQ Global Workplaces, which employed Mr. Rupert prior to his employment with IKON from 1999 through January 2002.

47.     Mr. Rupert denies the averments contained in paragraph 47 of the Complaint.  By way of further answer, Mr. Rupert incorporates herein by reference the averments contained in paragraphs 1 through 59 of his Counterclaims.

48.     The averments contained in paragraph 48 of the Complaint constitute improper and incomplete hypotheticals, which are denied, and as to which no further response is required. If and to the extent a further response is deemed to be required, Mr. Rupert denies the accuracy and completeness of IKON's assertions concerning the Executive Employment Agreement and respectfully refers the Court to the full contents of said agreement, which is in writing and speaks for itself.

49.     Mr. Rupert denies the averments and conclusions of law contained in paragraph 49 of the Complaint.

50.     Mr. Rupert denies the averments and conclusions of law contained in paragraph 50 of the Complaint.

51.     Mr. Rupert denies the averments and conclusions of law contained in paragraph 51 of the Complaint.

52.     Mr. Rupert denies the averments contained in paragraph 52 of the Complaint.

53.     Mr. Rupert denies the averments contained in paragraph 53 of the Complaint.

## COUNT I
### (Breach of Contract)

54.     Mr. Rupert repeats and reavers his responses to paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55.     Mr. Rupert admits the averments contained in paragraph 55 of the Complaint.

56.     Mr. Rupert admits the averments contained in paragraph 56 of the Complaint.

57.     Mr. Rupert denies knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 57 of the Complaint and on that basis denies those averments.

58.     Mr. Rupert denies the averments contained in paragraph 58 of the Complaint, except Mr. Rupert admits that he executed the Executive Employment Agreement, was employed by IKON, and received a salary and other benefits in excess of $137,500.

59.     Mr. Rupert admits the averments contained in paragraph 59 of the Complaint.

60.     Mr. Rupert denies the averments contained in paragraph 60 of the Complaint, except Mr. Rupert admits that IKON also provided him with health and dental insurance and the right to paid vacation.

61.     Mr. Rupert denies the averments contained in paragraph 61 of the Complaint.

62.     Mr. Rupert denies the averments contained in paragraph 62 of the Complaint.

63.     Mr. Rupert denies the averments contained in paragraph 63 of the Complaint.

64.     Mr. Rupert denies the averments contained in paragraph 64 of the Complaint.  By way of further answer, Mr. Rupert specifically denies that he is currently working or employed by Smooth Engine in Competition with IKON and avers in any event that IKON's prior material breaches of its obligations under the Executive Employment Agreement and Relocation Agreement, which are detailed in paragraphs 1 through 59 of Mr. Rupert's Counterclaims,

relieve Mr. Rupert of the obligation to abide by the non-competition and confidentiality provisions of the Executive Employment Agreement.

65.     Mr. Rupert denies the averments and conclusions of law contained in paragraph 65 of the Complaint.

66.     Mr. Rupert denies the averments and conclusions of law contained in paragraph 66 of the Complaint.

67.     Mr. Rupert denies the averments contained in paragraph 67 of the Complaint.

68.     Mr. Rupert denies the averments and conclusions of law contained in paragraph 68 of the Complaint.

## COUNT II
### (Breach of Contract)

69.     Mr. Rupert repeats and reavers his responses to paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70.     Mr. Rupert admits the averments contained in paragraph 70 of the Complaint.

71.     Mr. Rupert admits the averments contained in paragraph 71 of the Complaint.

72.     Mr. Rupert denies the averments contained in paragraph 72 of the Complaint.

73.     Mr. Rupert denies the averments contained in paragraph 73 of the Complaint.

74.     Mr. Rupert denies the averments and conclusions of law contained in paragraph 74 of the Complaint.

75.     Mr. Rupert denies the averments contained in paragraph 75 of the Complaint

## COUNT III
### (Breach of Fiduciary Duty)

76.     Mr. Rupert repeats and reavers his responses to paragraphs 1 through 75 of the Complaint as if fully set forth herein.

77.     Mr. Rupert denies knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 77 of the Complaint and on that basis denies those averments, except Mr. Rupert avers that he did faithfully and fully perform his employment duties and fulfill his obligations to IKON.

78.     Mr. Rupert denies the averments contained in paragraph 78 of the Complaint in part and admits them in part.  Mr. Rupert denies the implication of paragraph 78 that he breached his duty of loyalty to IKON.  Mr. Rupert admits that the position of Vice President, Management Services was a "key, executive" position that reported directly to the Chairman, Mr. Espe.

79.     Mr. Rupert denies the averments contained in paragraph 79 of the Complaint.

80.     Mr. Rupert denies the averments and conclusions of law contained in paragraph 80 of the Complaint.

81.     Mr. Rupert denies the averments contained in paragraph 81 of the Complaint.

82.     Mr. Rupert denies the averments contained in paragraph 82 of the Complaint.

83.     Mr. Rupert denies the averments contained in paragraph 83 of the Complaint.

84.     Mr. Rupert denies the averments contained in paragraph 84 of the Complaint.

85.     Mr. Rupert denies each and every averment and/or conclusion of law contained in the Complaint that is not expressly admitted above.

## ADDITIONAL DEFENSES

Mr. Rupert reserves the right to assert any and all applicable defenses to IKON's claims. Mr. Rupert has not yet obtained adequate discovery from IKON or others in connection with this action, and Mr. Rupert therefore reserves the right to amend or otherwise supplement this pleading.  Without limiting the generality of the foregoing and without regard to whether defenses set forth below are affirmative defenses within the meaning of Federal Rule of Civil

Procedure 8(c), and without conceding that any such defenses must be set forth in his answer or assuming any burden of proof that he would not otherwise bear, Mr. Rupert states as follows:

### FIRST ADDITIONAL DEFENSE

IKON's claims are barred, in whole or in part, because Mr. Rupert has fulfilled all of his contractual obligations to IKON.

### SECOND ADDITIONAL DEFENSE

IKON's claims are barred, in whole or in part, because IKON's material breach of the parties' Executive Employment Agreement and Relocation Agreement, as averred in paragraphs 1 through 59 and 64 through 68 of his Counterclaims, excused Mr. Rupert's performance obligations under such agreements.

### THIRD ADDITIONAL DEFENSE

IKON's claims are barred because to permit IKON to prevail on such claims would unjustly enrich IKON.

### FOURTH ADDITIONAL DEFENSE

IKON's claims, including IKON's claims for equitable relief, are barred, in whole or in part, by the doctrines of *in pari delicto*, unclean hands, and/or similar doctrines barring claims by persons with equal or greater participation in, or fault regarding, the underlying alleged misconduct.

### FIFTH ADDITIONAL DEFENSE

IKON's claims are barred, in whole or in part, because Mr. Rupert's actions have not caused IKON, whether proximately or otherwise, any damages or losses.

## SIXTH ADDITIONAL DEFENSE

IKON's claims are barred, in whole or in part, for the reasons and by virtue of the claims averred in Mr. Rupert's Counterclaims.

## SEVENTH ADDITIONAL DEFENSE

IKON's Complaint fails to state a claim against Mr. Rupert upon which relief can be granted.

## EIGHTH ADDITIONAL DEFENSE

IKON's claim against Mr. Rupert for punitive damages is baseless and should be stricken.

## COUNTERCLAIMS
### (Description of Dispute)

Defendant and counterclaim plaintiff David Rupert ("Mr. Rupert") sets forth the following averments in support of his Counterclaims against plaintiff and counterclaim defendant IKON Office Solutions, Inc. ("IKON") and counterclaim defendants Matthew J. Espe and Beth Sexton (collectively "Counterclaim Defendants").

1.     This case arises from the Counterclaim Defendants' willful, malicious and bad faith attempt to avoid paying wages and benefits contractually due to Mr. Rupert and their subsequent willingness to smear the reputation of Mr. Rupert to avoid these contractual obligations.

2.     From Monday, November 3, 2003 through Friday, April 30, 2004, Mr. Rupert served as Vice President, Management Services for counterclaim defendant IKON.

3.     During the full six months of his employment, Mr. Rupert received no negative feedback about his performance with IKON. During that time, he had never been criticized for his performance or for his personal behavior.

13

4.      With one-day's notice, Mr. Rupert was unexpectedly and unceremoniously terminated from his position with IKON following a corporate reorganization that was implemented by IKON's Chairman and CEO, Matthew Espe, in late April 2004.

5.      As explained in greater detail below, Mr. Rupert's employment agreement and other written agreements between Mr. Rupert and IKON provided that in the event of termination resulting from a corporate reorganization, Mr. Rupert would receive certain benefits, consisting of (1) severance payments of one year's base salary totaling $275,000; (2) health benefits, in the form of COBRA payments that would be made by IKON on his behalf for one year following termination; (3) a pro-rated annual incentive bonus, worth up to 50% of his base salary; and (4) the retention of the full amount of a $125,000 relocation payment made to Mr. Rupert.

6.      Rather than honoring all of its contractual commitments, IKON falsely claimed that Mr. Rupert had been terminated for poor performance and disclaimed its obligation to pay Mr. Rupert his incentive bonus and improperly demanded that Mr. Rupert repay $95,000 of the relocation payment in violation of the parties' prior contractual agreement.

7.      After Mr. Rupert insisted that IKON fully honor its prior agreements regarding the incentive bonus and relocation payments, IKON retaliated by refusing to make the agreed-upon severance payments to Mr. Rupert and the agreed-upon COBRA payments on his behalf.

8.      IKON has further retaliated by filing a meritless lawsuit, which smears Mr. Rupert's reputation by alleging, without any factual basis, that Mr. Rupert had breached his employment agreement by failing to carry out his duties and had engaged in acts of dishonesty, moral turpitude and breaches of his duties of loyalty to IKON.

14

## PARTIES

9.      Defendant and counterclaim plaintiff, David Rupert, is an adult individual and is a citizen of the State of Connecticut, residing at 2 Rustic Lane, Westport, Connecticut.

10.      Plaintiff and counterclaim defendant IKON Office Solution, Inc., ("IKON") is an Ohio corporation with its principal place of business at 70 Valley Stream Parkway, Malvern, Pennsylvania, 13555.

11.      Counterclaim defendant Matthew J. Espe is an adult individual and is a citizen of the Commonwealth of Pennsylvania.  Mr. Espe is, and was at all times relevant to this dispute, the Chairman and Chief Executive Officer of IKON.

12.      Counterclaim defendant Beth Sexton is an adult individual and is a citizen of the Commonwealth of Pennsylvania.  Ms. Sexton is, and was at all times relevant to this dispute, Senior Vice President, Human Resources for IKON.

## JURISDICTION AND VENUE

13.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Jurisdiction over these counterclaims is also proper under 28 U.S.C. § 1367.

14.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) as all counterclaim defendants are subject to personal jurisdiction in this judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

15.      On October 27, 2003, IKON named Mr. Rupert as Vice President of Management Services, reporting directly to Mr. Espe.

15

16.     The role that Mr. Rupert was to fill at IKON was a new one.  Mr. Rupert was told that IKON was attempting to focus its business more on the services business as IKON's primary equipment business was beginning to decline.

17.     While interviewing Mr. Rupert for the position, Mr. Espe stated that he wanted an experienced, senior executive to fill this position rather than an internal candidate or someone with limited experience.

18.     Prior to accepting this position with IKON, Mr. Rupert had been Chief Development Officer of Uniscribe Professional Services.  Prior to that, Mr. Rupert had been President and Chief Operating Officer and then CEO of HQ Global Workplaces, the world's largest provider of fully serviced office space.  Before that, he had been President of Pitney Bowes Business Services, a division of Pitney Bowes that provides a range of business services including mail, document and record management.

19.     Mr. Rupert is a graduate of Georgetown University and has a Masters of Management from the Yale School of Management.

20.     At the time he accepted the position with IKON, Mr. Rupert resided in Connecticut, and while he was interviewing with Mr. Espe, they discussed Mr. Rupert's willingness to relocate his residence to Malvern, Pennsylvania.

21.     Mr. Espe verbally offered Mr. Rupert the position in early-October 2003, and Mr. Rupert verbally accepted the offer at that time.

22.     IKON issued a press release on October 27, 2003, naming Mr. Rupert as Vice President of Management Services as of that date.  Mr. Rupert's first day in the office was Monday, November 3, 2003, the first working day in November.

23.     On or about that time, Mr. Rupert executed an "Executive Employment Agreement" ("Employment Agreement") in connection with his position with IKON. Counterclaim defendant Beth Sexton, the Senior Vice President, Human Resources, executed the Employment Agreement on behalf of IKON. A true and correct copy of the Employment Agreement is attached hereto as Exhibit "A."

24.     The Employment Agreement was to run for an initial term of two years, effective November 3, 2003. The agreement entitled Mr. Rupert to an initial annualized base salary of $275,000 and made Mr. Rupert eligible for an annual incentive bonus equal to 50% of his base salary, based upon his performance and the company's performance. *See* Exhibit "A" at § 1.3.

25.     The Employment Agreement provided that IKON could terminate Mr. Rupert's employment for cause upon 60 days' written notice and an opportunity to cure if Mr. Rupert (1) failed to comply with any company policy, (2) repeatedly failed or refused to carry out his assigned duties and responsibilities, or (3) breached his obligations under the terms of the Employment Agreement. *See* Exhibit "A" at § 2.1.

26.     The Employment Agreement further provided that IKON could terminate Mr. Rupert for cause without prior notice if Mr. Rupert were to commit an act of dishonesty, moral turpitude or theft or in breach of his duties of loyalty to IKON. *See* Exhibit "A" at § 2.1.

27.     The Employment Agreement further provided that IKON could terminate Mr. Rupert not for cause, at any time with or without prior notice, for reasons other than those set forth in paragraphs 25 and 26 above. However, if Mr. Rupert's termination was not for cause, the Employment Agreement guaranteed that he would receive (1) a pro-rated bonus payment, provided that he had served in his position for six months in the fiscal year in which the termination occurred; and severance benefits in the form of (2) continued base salary for a

17

minimum of one year; and (3) COBRA payments for a period of one year to cover the cost of continued group health insurance coverage. *See* Exhibit "A" at §§ 2.2, 2.4.

28.    In January 2004, Mr. Rupert and IKON also entered into a "Relocation Payment and Expense Reimbursement Agreement" ("Relocation Agreement"). A true and correct copy of the Relocation Agreement is attached hereto as Exhibit "B."

29.    In the Relocation Agreement, IKON agreed to pay Mr. Rupert a lump-sum relocation payment in the amount of $125,000. The Relocation Agreement further provided that Mr. Rupert was entitled to retain the full amount of the relocation payment if his employment was terminated due to the elimination or substantial redefinition of his position:

> IKON agrees to pay you a lump sum relocation payment in the gross amount of $125,000 ("Relocation Payment"), which will be taxable income to you upon receipt and in or around January, 2004. In the event of termination of your employment for any reason (**other than a termination by IKON due to the elimination or substantial redefinition of your position**), within a twenty-four (24) month period following the date of the relocation bonus payment, January 9, 2004, you agree to repay IKON, prior to your last day with IKON, a prorated portion of the full gross amount of your Relocation Payment.

*See* Exhibit "B" (bold emphasis supplied).

30.    In the Relocation Agreement, IKON also agreed to reimburse Mr. Rupert for six months of temporary living for relocation. Mr. Rupert was entitled to retain this full benefit if his employment was terminated due to the elimination or substantial redefinition of his position. *See* Exhibit "B."

31.    In the six months that Mr. Rupert served as Vice President for Management Services, he fulfilled all of his duties and obligations under the Employment Agreement and met or exceeded all of the performance goals that had been set for him. He received uniformly

18

positive comments on his work, and had never received any negative comments from anyone at IKON about his performance or his behavior at or outside of the office.

32.     On Thursday, March 18, 2004, following a presentation to IKON's Board of Directors regarding the company's strategic plans, Mr. Espe informed Mr. Rupert and others who presented to the Board that they had done a terrific job.

33.     Unbeknownst to Mr. Rupert, only one month after that presentation, Mr. Espe was planning a reorganization of IKON's operations that would eliminate Mr. Rupert's position. Without informing Mr. Rupert, on April 23, 2004, Mr. Espe discussed with Michael Kohlsdorf, Vice President, Professional Services for IKON, Mr. Espe's plan to consolidate functions overseen by Mr. Rupert with Mr. Kohlsdorf.  In essence, Mr. Espe explained that as a result of this reorganization Mr. Rupert's position would be eliminated.

34.     At the beginning of the week of April 26, 2004, Mr. Espe informed Mr. Kohlsdorf that he had made the final decision to effect the consolidation.

35.     On Wednesday, April 28, 2004, still unaware of Mr. Espe's plans, Mr. Rupert was asked to schedule a meeting with Mr. Espe for late in the day on April 29.  That meeting began after 5:00 p.m., and Mr. Espe stated to Mr. Rupert that the role Mr. Rupert had filled was not working out, that he was being terminated and that the next day, Friday April 30, 2004, would be his last day.

36.     On the following day, April 30, 2004, Mr. Rupert met with Ms. Sexton to discuss the terms of his separation from IKON.

37.     Ms. Sexton presented Mr. Rupert with a draft separation agreement.  A true and correct copy of this document is attached hereto as Exhibit "C."  The draft separation agreement did not provide a reason for Mr. Rupert's termination, it merely stated that his employment with

19

IKON would end on Friday, April 30, 2004, which was the last working day in April 2004. Although the draft agreement provided for bi-weekly severance payments of his base salary for one year and COBRA payments for the same period, it made no mention of Mr. Rupert's contractual right to a pro-rated incentive bonus, which would have been worth up to $68,750, and in violation of his rights under the Relocation Agreement, the draft separation agreement purported to require Mr. Rupert to pay IKON $95,500, representing a pro-rated repayment of the Relocation Payment. *See* Exhibit "C."

38.     When Mr. Rupert questioned Ms. Sexton about his incentive bonus and the repayment of the Relocation Payment, Ms. Sexton suggested that Mr. Rupert's termination may have been "for cause." Mr. Rupert responded that Ms. Sexton's statement was the first time any one at IKON had ever suggested that there were any performance issues with his work. In contradiction of her statement that Mr. Rupert's termination had been for cause, Ms. Sexton then hastily responded that "Matt [Espe] has too many direct reports," which confirmed that Mr. Rupert had been terminated not for cause, but rather as a result of the reorganization.

39.     Moreover, under the terms of the Employment Agreement, IKON had to provide Mr. Rupert with 60 days notice and an opportunity to cure before it could terminate him for cause related to his performance of his duties under that agreement.

40.     Ms. Sexton told Mr. Rupert that she would discuss his concerns about the bonus payment and repayment of the Relocation Payment with Mr. Espe and would get back to him.

41.     On May 5, 2004, IKON publicly announced the reorganization that Mr. Espe had previously discussed with Mr. Kohlsdorf. A true and correct copy of the press release is attached hereto as Exhibit "D." Mr. Kohlsdorf was given a new title, Senior Vice President of IKON Enterprise Services, and five IKON teams, including management services, were to report to Mr.

20

Kohlsdorf.  The position held by Mr. Rupert, Vice President, Management Services reporting directly to Mr. Espe, was either eliminated or substantially redefined.

42.     On or about May 6, 2004, Mr. Rupert received a revised draft separation agreement from Ms. Sexton.  A true and correct copy of this document is attached hereto as Exhibit "E."  Despite the fact that Mr. Rupert had been terminated as a result of the reorganization, and in contrast to the first draft, the revised separation agreement purported to require Mr. Rupert to "agree[] and acknowledge that your employment with IKON was terminated for performance reasons."  *See* Exhibit "E."

43.     The revised separation agreement provided that Mr. Rupert would receive a full year's salary as severance and would also receive a year's worth of COBRA benefits.

44.     Although the revised agreement stated that he would be eligible for a prorated portion of his annual incentive bonus, the revised agreement falsely stated that Mr. Rupert's employment was for a period of less than six months when it is undisputed that Mr. Rupert held his position for every working day in November and December 2003, and January, February, March and April 2004 – in other words, for six months.  *See* Exhibit "E."

45.     Moreover, the bonus payment was to be based on Mr. Rupert's performance during his employment, and IKON was simultaneously, and for the first time, claiming that Mr. Rupert's termination was for performance reasons, providing IKON with an easy means to avoid paying the bonus that was contractually due to Mr. Rupert.  *See* Exhibit "E."

46.     Finally, the revised draft separation agreement still purported to require Mr. Rupert, in violation of his rights under the Relocation Agreement, to pay IKON $95,500 as a prorated portion of the Relocation Payment. *See* Exhibit "E."

21

47.     Mr. Rupert continued to object to the terms of IKON's proposed separation agreement as violative of his rights under the Employment Agreement, the Relocation Agreement and Pennsylvania's Wage Payment and Collection Law.

48.     After it terminated Mr. Rupert, IKON paid him one week's severance pay, rather than the full year's severance he is entitled to.  IKON has also failed to make COBRA payments on his behalf or to reimburse Mr. Rupert for COBRA payments he has made.

49.     On June 21, 2004, IKON filed suit against Mr. Rupert, claiming (falsely and for the first time) that he had been terminated for unidentified violations of company policies, failure to carry out his duties, undisclosed breaches of his Employment Agreement, and, incredibly, for unidentified acts of dishonesty, moral turpitude and embarrassing behavior.

50.     The conclusory allegations in IKON's complaint are complete lies.  During the entire term of his employment, no one at IKON had ever made such accusations, or even made any comment that could remotely be construed as suggesting that Mr. Rupert had failed to fulfill his duties or had behaved in any way improperly.

51.     IKON has also falsely alleged that Mr. Rupert violated a restrictive covenant set forth in his Employment Agreement.

52.     IKON's action in filing suit against Mr. Rupert are part and parcel of its bad faith and malicious attempt to avoid fulfilling its clear contractual obligations to Mr. Rupert, its retaliation against him for trying to protect his contractual and statutory rights, and was taken in violation of Pennsylvania's Wage Payment and Collection law.

## COUNT I - BREACH OF CONTRACT
### (Against IKON Office Solutions, Inc.)

53.     Defendant and counterclaim plaintiff repeats and reavers paragraphs 1 through 52 above as if fully set forth herein.

22

54.     Mr. Rupert has fully performed all of his obligations under the Employment Agreement and the Relocation Agreement.

55.     Under the terms of the Employment Agreement, IKON is obligated to pay Mr. Rupert a full-year's severance of $275,000, in bi-weekly installments, through the end of April 2005.  IKON has failed to make any severance payments to Mr. Rupert for any time after May 9, 2004, in breach of that agreement.

56.     Under the terms of the Employment Agreement, IKON is obligated to make COBRA payments on behalf of Mr. Rupert or to compensate Mr. Rupert for COBRA payments he has made to continue his health insurance coverage during his severance period.  IKON has failed to make these payments in breach of that agreement.

57.     Under the terms of the Employment Agreement, Mr. Rupert is entitled to a bonus payment of up to $68,750 for his service for the months of November 2003 through April 2004 in the fiscal year ending September 30, 2004.  In violation of that Agreement, IKON in bad faith (1) terminated Mr. Rupert without any prior notice in a (misguided) attempt to cut off Mr. Rupert's contractual right to receive a bonus; (2) has refused to acknowledge its obligation to pay Mr. Rupert the bonus when it comes due, and (3) has falsely claimed that Mr. Rupert was terminated for performance reasons, without providing him 60 days notice and an opportunity to cure any problems with his performance, thereby putting his ability to obtain that bonus in jeopardy.

58.     Under the terms of the Relocation Agreement, Mr. Rupert was entitled to retain the full amount of the Relocation Payment because he was terminated due to the elimination or substantial redefinition of his position.  In bad faith and in violation of that agreement, IKON has falsely claimed that Mr. Rupert was terminated for performance reasons and has improperly

23

demanded that Mr. Rupert pay IKON $95,500 in relocation expenses as a condition of his separation agreement.

59. As a result of IKON's actions, Mr. Rupert has suffered and will continue to suffer substantial damages.

**COUNT II**
**VIOLATIONS OF PENNSYLVANIA'S WAGE PAYMENT AND COLLECTION LAW,**
**43 P.S. §260.1, *et seq***
**(Against all Counterclaim Defendants)**

60. Defendant and counterclaim plaintiff repeats and reavers paragraphs 1 through 59 above as if fully set forth herein.

61. The severance salary payments, COBRA payments, and incentive bonus that Mr. Rupert is contractually entitled to constitute "wages" under Pennsylvania's Wage Payment and Collection Law.  *See* 43 P.S. § 260.2a.

62. Counterclaim defendants IKON, Mr. Espe and Ms. Sexton are all "Employers" under the Wage Payment and Collection Law and are all liable under the law for the wages due to Mr. Rupert.

63. In violation of the Wage Payment and Collection Law, the Counterclaim Defendants have, unreasonably and without a good faith justification, failed to pay to Mr. Rupert his severance salary and COBRA payments as those amounts have come due following Mr. Rupert's termination.

**COUNT III**
**DECLARATION THAT RESTRICTIVE COVENANT AND RESTRICTION ON THE**
**USE OF CONFIDENTIAL INFORMATION ARE UNENFORCEABLE**
**(Against IKON Office Solutions, Inc.)**

64. Defendant and counterclaim plaintiff repeats and reavers paragraphs 1 through 63 above as if fully set forth herein.

24

65.     This Court has the authority to grant declaratory relief declaring the parties' rights under the contracts at issue pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

66.     As set forth above, IKON has materially breached the terms of the Employment Agreement and the Relocation Agreement with Mr. Rupert.

67.     Despite its own material breaches of those agreements, IKON has brought suit falsely alleging that after his termination Mr. Rupert has violated a provision in the Employment Agreement restricting Mr. Rupert from using IKON's confidential information and a restriction on Mr. Rupert's post-termination employment in the Employment Agreement.

68.     By reason of IKON's own material breaches, the restriction on Mr. Rupert's post-termination employment and the restriction on the use of confidential information in the Executive Employment Agreement should be declared to be unenforceable against Mr. Rupert.

**WHEREFORE**, defendant and counterclaim plaintiff David Rupert respectfully requests judgment against plaintiff IKON Office Solutions, Inc. and Counterclaim Defendants IKON Office Solutions, Inc., Matthew J. Espe, and Beth Sexton, as follows:

(1)     in favor of Mr. Rupert and against IKON as to all claims and counts set forth in IKON's Complaint;

(2)     for compensatory damages in an amount to be proven at trial, as well as his reasonable attorneys' fees and costs incurred;

(3)     liquidated damages as provided in 43 P.S. §260.10;

(4)     a declaration, pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57, that the restriction on the use of confidential information in the Executive Employment Agreement is unenforceable owing to IKON's prior material breach of that agreement;

25

(5)     a declaration, pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57, that the

restriction on Mr. Rupert's post-termination employment in the Executive Employment

Agreement is unenforceable; and

(6)     such other and further relief as the Court deems just, equitable and proper under

the circumstances.

Dated:  July  15, 2004                                  Respectfully submitted,

                                                        **BUCHANAN INGERSOLL PC**

                                                        By: _____
                                                            Steven E. Bizar
                                                            Thomas P. Manning
                                                            1835 Market Street, 14th Floor
                                                            Philadelphia, PA  19103
                                                            (215) 665-8700 (tel)
                                                            (215) 665-8760 (fax)

                                                            **Attorneys for Defendant and Counterclaim
                                                            Plaintiff David Rupert**

**CERTIFICATE OF SERVICE**

I, Steven E. Bizar, hereby certify that, on this 15th day of July, 2004, I caused a true and correct copy of the foregoing document to be served upon the following counsel of record for Plaintiff and Counterclaim Defendant, IKON Office Solutions, Inc. at the following address by first-class U.S. mail, postage pre-paid:

John M. Elliott, Esquire
Timothy T. Myers, Esquire
Elliott Reihner & Siedzikowski, P.C.
Union Meeting Corporate Center V
925 Harvest Drive
Blue Bell, PA  19422

Steven E. Bizar